UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KATHY BUCKNELL,**

**Plaintiff,**

v.                                                           **Case No. 6:24-cv-1822-CEM-DCI**

**BECKMAN COULTER, INC.,**

**Defendant.**

_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment ("Motion," Doc. 23), to which Plaintiff filed a Response (Doc. 31), and Defendant filed a Reply (Doc. 32). For the reasons set forth herein, the Motion will be granted.

## I.    BACKGROUND

Plaintiff was fifty-two years old when she worked as a "Commercial Product Manager QC [quality control]" for Defendant, a biomedical testing company. (Compl., Doc. 1, at 4; Answer, Doc. 11, at 6; Pl.'s Dep., Doc. 23-2, at 48; Decl. Quiñones-Ramos, Doc. 23-1, at 2). In her role, Plaintiff worked with Tom Feng, the "Senior Product Manager Quality Control Technical," who was in his thirties. (Doc. 23-2 at 52; Pl.'s Ex. C, Doc. 31-1, at 69). Plaintiff and Feng were managed by Onyi

Nacionales. (Nacionales Dep., Doc. 23-4, at 14). Feng resigned, and Nacionales took some time to determine how she wanted to manage or distribute his workload. (*Id.* at 19). Ultimately, Nacionales brought on Nicole Aguilar, who was also in her thirties and already employed by Defendant in a different role, to join the team as the "Global Product Manager, Particle QC Portfolio." (*Id.* at 18–20; Doc. 31-1 at 69). This was a slightly different role than Feng had occupied, but no one else was hired to replace Feng. (Doc. 23-4 at 18, 20). Before notifying Plaintiff of Feng's resignation, Nacionales approached Aguilar about filling the position. (Doc. 23-2 at 87–89).

While Feng was employed by Defendant, Plaintiff observed that Nacionales canceled meetings with Feng less frequently than meetings with Plaintiff, that an expense report Feng submitted was approved before an expense report Plaintiff submitted, and that Nacionales scheduled a call with the sales team while Plaintiff was traveling. (*Id.* at 83, 85, 104). When Aguilar joined the team, Nacionales introduced Aguilar—but not Plaintiff—to the sales team, and continued to cancel meetings with Plaintiff. (*Id.* at 104, 106). As a result of these events, Plaintiff felt that she was being discriminated against due to her age. (*Id.* at 139). Plaintiff met with Lynda Mitzkewicz, a talent acquisition advisor, and Edgar Quinones-Ramos, the director of global human resources, regarding transferring positions within company. (*Id.* at 68–69, 73). Plaintiff asserts that she complained about

discrimination during these meetings, although Quinones-Ramos denies that Plaintiff complained about discrimination. (*Id.* at 68; Doc. 23-1 at 4). One week after meeting with Quinones-Ramos and approximately one month after Aguilar was hired, Plaintiff was terminated. (Doc. 23-2 at 111; Nacionales Decl., Doc. 23-3, at 5).

Defendant terminated Plaintiff and eliminated Plaintiff's position pursuant to a reorganization strategy that involved replacing Plaintiff's position with a more technical position that Plaintiff was not qualified for. (Doc. 23-3 at 3–4). The reorganization strategy was contemplated before Plaintiff's complaints about discrimination. (*Id.* at 3; Doc. 23-1 at 3). After Plaintiff's termination, Matthieu Chausseau, who is close in age to Plaintiff, was hired to fill a new Senior Technical Product Manager position. (Doc. 23-3 at 4). Plaintiff filed this action alleging discrimination in violation of the Age Discrimination in Employment Act ("ADEA") (Count I), and the Florida Civil Rights Act ("FCRA") (Count II), as well as retaliation in violation of the ADEA (Count III) and FCRA (Count IV). (*See generally* Doc. 1).

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.*

"The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1313–14 (11th Cir. 2007). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when faced with a "properly supported motion for summary judgment," the nonmoving party "must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997) (citing *Anderson*, 477 U.S. at 248–49) *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "[T]he proper inquiry on summary judgment is 'whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Stitzel v. N.Y. Life Ins. Co.*, 361 F. App'x 20, 22 (11th Cir. 2009) (quoting *Anderson*, 477 U.S. at 251–52). Put another way, a motion for summary judgment should be denied only "[i]f reasonable minds could differ on the inferences arising from undisputed [material] facts." *Pioch v. IBEX Eng'g Servs.*, 825 F.3d 1264, 1267 (11th Cir. 2016) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)).

### III.   ANALYSIS

"Under the ADEA, an employer may not discriminate or retaliate on the basis of age against an employee who is at least 40 years old." *Washington v. UPS, Inc.*, 567 F. App'x 749, 751 (11th Cir. 2014) (citing 29 U.S.C. §§ 623(a), (d), 631(a)). "The FCRA mirrors the ADEA." *Barker v. FedEx*, No. 2:19-cv-280-JLB-NPM, 2021 U.S. Dist. LEXIS 62764, at *18 (M.D. Fla. Mar. 31, 2021). Thus, Plaintiff's ADEA and FCRA claims will be analyzed together. *See Zaben v. Air Prods. & Chemicals, Inc.*, 129 F.3d 1453, 1455 n.2 (11th Cir. 1997) ("Age discrimination claims brought under the Florida Civil Rights Act have been considered within the same framework used to decide actions brought pursuant to the ADEA."); *Brillinger v. City of Lake Worth*, 317 F. App'x 871, 877 n.5 (11th Cir. 2008) ("The elements of retaliation under the FCRA and the ADEA are the same.").

## A.    Discrimination

The ADEA states that "'[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) (quoting 29 U.S.C. § 623(a)(1)). The phrase "because of" as used in the ADEA statute means that a "plaintiff must prove that discrimination was the 'but-for' cause of the adverse employment action." *Id.* (citing *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 176 (2009)). A plaintiff may present direct or circumstantial evidence of discrimination. *Id.* Here, Plaintiff does not present any direct evidence of discrimination. (*See generally* Doc. 1; Doc. 31).

When an ADEA claim is based on circumstantial evidence courts use the *McDonnell Douglas* burden-shifting framework to evaluate the claim. *Sims*, 704 F.3d at 1332. But *McDonnell Douglas* is not the *sine qua non* for surviving summary judgment. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff will also survive summary judgment if "the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (citations and quotations omitted). The Court will first assess whether Plaintiff has satisfied the *McDonnell Douglas* framework and then it will consider whether

Plaintiff has presented a convincing mosaic of circumstantial evidence of discrimination.

### 1.     *McDonnell Douglas*

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden to establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Once the plaintiff has shown a prima facie case, "the burden of *production* is shifted to the [defendant] to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Sims*, 704 F.3d at 1333. If the defendant offers such a reason, then the plaintiff has an opportunity to show that the defendant's reason is a pretext for discrimination. *Id.* at 1333.

To establish a prima facie case of unlawful discrimination under the ADEA, a plaintiff typically must show that: "(1) [s]he was a member of a protected class; (2) [s]he was subjected to an adverse employment action; (3) [s]he was qualified to do the job; and (4) [s]he was replaced by or otherwise lost a position to a younger individual." *Mitchell v. City of Lafayette*, 504 F. App'x 867, 870 (11th Cir. 2013). However, when an employee is terminated as the result of a reduction in force ("RIF"), the Eleventh Circuit applies a modified prima facie burden that requires a

plaintiff to show: "(1) [she] was in a protected age group; (2) [she] was adversely affected by an employment decision; (3) [she] was qualified for [her] current position or to assume another position at the time of discharge; and (4) the evidence could lead a factfinder reasonably to conclude that the employer intended to discriminate on the basis of age." *Id.*

"Whether the standard version or the RIF version of the ADEA *prima facie* case applies depends on [an employee's] ability to present sufficient evidence that [s]he was replaced by a younger individual." *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1271 (11th Cir. 2014). To demonstrate that she was replaced, Plaintiff may show that "some of [her] former responsibilities were delegated to another employee, in addition to that other employee's own responsibilities." *Id.* The record reflects that most of Plaintiff's responsibilities were delegated to Chausseau. (Doc. 23-4 at 29 (stating that Chausseau took over the portfolio Plaintiff was managing)). Further, the department that Nacionales managed had the same number of employees before and after Plaintiff's termination, indicating that there was no reduction in the workforce. (*See* Doc. 23-3 at 3). Considering this evidence in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff was effectively replaced rather than terminated due to an RIF. *See Mazzeo*, 746 F.3d at 1271 (finding that the district court erred in applying the RIF version of the prima facie case where the duties of the plaintiff's position were consolidated with the

duties of another position). Therefore, the standard ADEA prima facie case analysis applies.

The only element of the standard prima facie case that is contested is that Plaintiff was replaced by someone substantially younger. (*See* Doc. 23 at 10, 12). Defendant denies that Plaintiff was replaced at all but alternatively argues that Chausseau replaced Plaintiff. (*Id.* at 13). On the other hand, Plaintiff asserts that she was replaced by Aguilar who is 21 years younger than her. (Doc. 31 at 12–14). Defendant emphasizes that Aguilar was hired to replace Feng and worked alongside Plaintiff for over a month. (Doc. 23 at 13–14). Yet an employee's replacement can be hired while they are still employed. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987) (concluding that a plaintiff had met her burden of stating a prima facie case where she contended that her employer "restructured and re[-]labelled her position, hired someone else to fill it, had her train that person, and then terminated her").

Neither party has explained with specificity the responsibilities that the roles held by Plaintiff, Feng, Chausseau, and Aguilar entailed. From the record evidence, it is not clear that among these four individuals any one-to-one replacements occurred: Feng held the Senior Product Manager Quality Control Technical role, Aguilar was hired in the Global Product Manager, Particle QC Portfolio role, Plaintiff held the Commercial Products Manager QC role, and Chausseau was hired

as a Senior Technical Product Manager. (Doc. 31-1 at 69; Doc. 23-3 at 4). All four individuals worked under Nacionales in global product management within the quality control space. (Doc. 23-3 at 2–3). Given the reorganization of this team and the changes to the job titles, a reasonable factfinder could infer that Plaintiff was, in some ways, replaced by Aguilar.

Since Plaintiff has established a prima facie case of age discrimination, Defendant must articulate a legitimate, nondiscriminatory reason for terminating Plaintiff. *Sims*, 704 F.3d at 1333. Defendant asserts that Plaintiff was terminated based on a strategic decision to eliminate and replace Plaintiff's position with a more technical position, for which Plaintiff was not qualified. (Doc. 23-3 at 3). This is a legitimate, non-discriminatory reason for terminating Plaintiff. *See Minton v. Am. Bankers Ins. Grp., Inc.*, No. 00-3376-CIV-SEITZ/BANDSTRA, 2002 U.S. Dist. LEXIS 7539, at *24 (S.D. Fla. Apr. 24, 2002) ("A corporate reorganization resulting in a RIF and the elimination of a position is a legitimate, non-discriminatory reason for terminating an employee.") (citing *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1426 (11th Cir. 1998)).

Thus, to avoid summary judgment, Plaintiff must present evidence that Defendant's reason for terminating Plaintiff is a pretext for age discrimination. *Licausi v. Symantec Corp.*, 378 F. App'x 964, 966 (11th Cir. 2010). Plaintiff must prove both "that the reason was false and that discrimination was the real reason."

*Id.* It is not sufficient for Plaintiff to disagree with Defendant's reason, rather Plaintiff "must meet that reason head on and rebut it." *Id.* (quotation omitted). "To show pretext, a plaintiff may demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reasons for the employment action such that a reasonable factfinder could find them unworthy of credence." *Id.* (citations and quotations omitted).

Plaintiff makes several arguments that appear to be discussing pretext throughout her Response. Some of these arguments are found within the discrimination section of Plaintiff's Response while others are in the retaliation section. That said, the lines between Plaintiff's discrimination and retaliation analysis are blurred. (*See generally* Doc. 31). In the interest of judicial economy, the Court will consider all of Plaintiff's arguments that relate to pretext here.

First, Plaintiff asserts that the product line she oversaw doubled its revenue during her tenure and that this "directly contradicts Defendant's claim that the position was eliminated for legitimate business reasons." (Doc. 31 at 14). This increase in revenue perhaps indicates that it was an imprudent business decision to replace Plaintiff, but it does not necessarily follow that discrimination was the reason Plaintiff was terminated. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (explaining that courts, "do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's

business decisions"); *see also Bailey v. Huntsville*, 517 F. App'x 857, 864 (11th Cir. 2013) ("A plaintiff cannot show pretext by recasting an employer's proffered non-discriminatory reasons or substituting her business judgment for that of the employer's."). Relatedly, Plaintiff argues that the absence of contemporaneous business analysis supporting the reorganization decision undermines Defendant's claim that Plaintiff was terminated due to reorganization. (Doc. 31 at 16–17). However, Defendant's internal business records show that as of December 1, 2023, Defendant was planning to restructure the department and eliminate Plaintiff's position and replace it with a more technical position. (Doc. 23-2 at 288–293). Nonetheless, even if this documentation is insufficient, without additional evidence of discriminatory intent, a lack of documentation does not show pretext where there is not an established system of documentation in place. *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1245–47 (11th Cir. 2001) (finding that although "lack of complaints or disciplinary reports in an employee's personnel file may support a finding of pretext," the plaintiff had not shown pretext where there was no formal review process in place and there was "virtually no evidence of discrimination."). Plaintiff has not shown that it is customary for Defendant to have contemporaneous business analysis supporting a reorganization decision.

Next, Plaintiff points to timing to show pretext. Aguilar was hired about a month before Plaintiff's termination and Plaintiff was terminated one week after her

protected activities. However, temporal proximity does not independently demonstrate a discriminatory motive. *Elver v. Whidden*, No. 2:18-cv-102-FtM-29CM, 2019 U.S. Dist. LEXIS 5272, at *24 (M.D. Fla. Jan. 9, 2019) ("[W]hile suspicious timing may establish an inference of a causal connection, timing alone is insufficient to demonstrate pretext."). Even taking as true that Plaintiff was a profitable employee, that Defendant lacked documentation to support her termination, and that the timing of her termination was suspicious, Plaintiff has not met her burden of showing "not just that [Defendant's] proffered reasons for firing her were ill-founded but that unlawful discrimination was the true reason." *Alvarez*, 610 F.3d at 1267. Plaintiff has thus not met her burden under the *McDonnell Douglas* analysis.

### 2. Convincing Mosaic

A plaintiff can survive a summary judgment motion by "present[ing] circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent"—i.e., "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith*, 644 F.3d at 1328 (quotation omitted). The convincing mosaic approach "treats an employment discrimination suit in same way we would treat any other case— jumping directly to the ultimate question of liability and deciding whether the moving party is entitled to judgment at that stage of the case." *Tynes v. Fla. Dep't*

*of Juv. Just.*, 88 F.4th 939, 947 (11th Cir. 2023). "A plaintiff proving her case through the convincing mosaic standard may point to any relevant and admissible evidence." *Id.* at 946 n.2. "[S]o long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." *Id.* (quoting *Smith*, 644 F.3d at 1328). A convincing mosaic "may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quotation omitted).

As Plaintiff testified, she was excluded from calls, her expense report was approved after Feng's, she was notified of Feng's resignation after Aguilar was notified, she was not introduced to the sales team when Aguilar was introduced, and Nacionales cancelled meetings with her at a higher rate than meetings with Feng and Aguilar. (Doc. 23-2 at 83, 85, 87–89, 104, 106). Defendant denies or provides an alternative explanation for several of these allegations. (Doc. 23-4 at 24–26, 44). But upon a motion for summary judgment, the Court will consider the facts in the light most favorable to Plaintiff.

The circumstantial evidence Plaintiff relies on does not raise a reasonable inference that Defendant discriminated against her. Plaintiff attempts to show discriminatory treatment by using Feng and Aguliar as comparators, but in several of the situations Plaintiff references they were not similarly situated to Plaintiff. *See Foster v. BioLife Plasma Servs., LP*, 566 F. App'x 808, 811 (11th Cir. 2014) (discussing pretext in a Title VII case and stating, "to the extent a plaintiff seeks to show disparate treatment of comparators, those individuals must still be similarly situated."). For example, Aguilar was informed of Feng's resignation before Plaintiff was, but at that time she was approached about filing the position and not an employee in Nacionales' department. (Doc. 23-2 at 89). Similarly, when Nacionales introduced Aguilar—but not Plaintiff—to the sales team, Aguilar was new to the department while Plaintiff was not. (*Id.* at 106). Aside from the fact that Feng and Aguilar are both younger than Plaintiff, nothing in the record suggests that suggests that Plaintiff was treated differently because of her age.

In sum, Plaintiff has not shown ambiguous statements, systematically better treatment of similarly situated employees, or pretext, and therefore has not presented sufficient evidence from which a reasonable jury could infer that Defendant discriminated against Plaintiff. *Compare Brunson v. Dekalb Cnty. Sch.*, No. 22-10177, 2023 U.S. App. LEXIS 17040, at *7 (11th Cir. July 6, 2023) (finding that a plaintiff had not shown a convincing mosaic of evidence of ADEA discrimination

where the "evidence did not show pretext, ambiguous statements, suspicious timing, or a systematic pattern of discrimination"); *with Jenkins v. Nell*, 26 F.4th 1243, 1251 (11th Cir. 2022) (concluding that a plaintiff had established a convincing mosaic of evidence of racial discrimination where there was evidence of biased comments, similarly situated employees being treated differently, and factual discrepancies that required weighing the deponents' credibility). Because Plaintiff has not shown discrimination under the *McDonnell Douglas* framework, or presented a convincing mosaic of evidence of discrimination, Defendant is entitled to summary judgment on Plaintiff's discrimination claims.

## B.    Retaliation

### 1.    *McDonnell Douglas*

Like discrimination claims, retaliation claims under the ADEA are analyzed under the *McDonnell Douglas* burden-shifting framework. *Stone v. Geico Gen. Ins. Co.*, 279 F. App'x 821, 822 (11th Cir. 2008). To establish a prima facie case of retaliation, Plaintiff must show "(1) she engaged in ADEA protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Id.* Defendant argues that Plaintiff did not engage in a protected expression and that even if Plaintiff did, Plaintiff cannot establish causation. (Doc. 23 at 21).

To demonstrate that she engaged in ADEA protected expression, Plaintiff must show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Stone*, 279 F. App'x at 823 (citation and quotation omitted). "A complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." *Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010) (citations and quotations omitted). An objectively reasonable report of discrimination that is made to human resources is a protected activity. *Stone*, 279 F. App'x at 823.

Defendant does not dispute that Plaintiff had a good faith, reasonable belief that she was being discriminated against, rather Defendant argues that Plaintiff never complained about discrimination. (Doc. 23 at 20–21). Plaintiff testified in her deposition that she complained about discrimination during the meetings with Mitzkewicz and Quinones-Ramos. (Doc. 23-2 at 68–69). Although Quinones-Ramos denied that Plaintiff complained of discrimination when he met with her, (Doc. 23-1 at 4), on a motion for summary judgment the Court will not weigh his testimony against Plaintiff's. *See United States v. Stein*, 881 F.3d 853, 858 (11th Cir. 2018). Plaintiff has shown that there is a genuine dispute of fact regarding whether she engaged in a protected activity.

Next, Plaintiff must show that retaliation was the but-for cause of an adverse action. *Wiggins v. City of Montgomery*, No. 2:17-cv-425-SMD, 2019 U.S. Dist. LEXIS 160334, at *38 (M.D. Ala. Sep. 20, 2019) (citations omitted). Plaintiff's termination constitutes an adverse action. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). A very close temporal proximity between a statutorily protected activity and an adverse action can establish causation. *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 642 (11th Cir. 2018). But the Eleventh Circuit has held that "'in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.'" *Id.* (quoting *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006)).

Defendant argues that Plaintiff has not established causation because her complaints about discrimination occurred after Defendant decided to terminate Plaintiff. (Doc. 23 at 21). Nacionales and Quinones-Ramos testified to this order of events. (Doc. 21-1 at 3; Doc. 23-4 at 32). Plaintiff emphasizes that the decision to terminate her was not finalized until after her complaints. Still, because Plaintiff's termination was contemplated before her complaints, temporal proximity alone is not enough to show that retaliation was the but-for cause of her termination. *See Drago*, 453 F.3d at 1308. Additionally, Plaintiff has not presented evidence that

Nacionales was aware of Plaintiff's complaints when she terminated her. Plaintiff has not demonstrated causation and therefore has not established a prima facie case of retaliation. Yet even if Plaintiff had established a prima facie case, her retaliation claims would fail because, for the same reasons this Court explained in the context of Plaintiff's discrimination claims, Plaintiff has not demonstrated pretext.

> 2.   *Convincing Mosaic*

"Without relying on the *McDonnell Douglas* framework, an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023). Plaintiff relies on the temporal proximity between her complaints and her termination to show retaliatory intent. (Doc. 31 at 16). As previously discussed, Plaintiff's argument regarding suspicious timing is weakened by the fact that Defendant contemplated Plaintiff's termination before her complaints. *See Berry*, 84 F.4th at 1312 (explaining that an employer's "intervening discovery of misconduct fatally undermines the probative value of temporal proximity between [the employee's] protected activity and her termination."). In addition to timing, Plaintiff highlights that there is no documentation that was generated before her complaints, regarding the decision to eliminate Plaintiff's position. (Doc. 31 at 16). Even so, two individuals testified that the elimination of Plaintiff's position was discussed before Plaintiff's complaints. (Doc. 21-1 at 3; Doc. 23-4 at 32). Plaintiff has not presented

evidence from which a reasonable factfinder could infer that retaliatory intent motivated Defendant. Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### IV.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 23) is **GRANTED**.

2. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff, providing that Plaintiff shall take nothing on her claims.

3. Thereafter, the Clerk is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on May 26, 2026.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record